```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SHAHEYM FERGUSON,                                           :
                                                            :
                                                            :
                              Plaintiff,                    :
                                                            :   **MEMORANDUM**
                  - against -                               :   **DECISION & ORDER**
                                                            :
CITY OF NEW YORK, POLICE OFFICER                            :   17-cv-4090 (BMC)
WILLIAM DUGAN, POLICE OFFICER                               :
RONALD SANCHEZ, DET. ANGELO                                 :
PIZZARRO, P.O. PATRICK SANON, and P.O.                      :
MARC ALTMAN,                                                :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Shaheym Ferguson has sued the City of New York and five police officers, alleging that some of those officers illegally stopped, arrested, and searched him, used excessive force, and retaliated against him in violation of his First Amendment rights (he alleged that the other officers failed to intervene to prevent these violations).[1] Plaintiff also brought state law claims against the officers for assault, battery, and false arrest, and a *respondeat superior* claim against the City. As explained below, defendants' motion for summary judgment is granted as to all of plaintiff's claims except the illegal search claim against Officer Dugan.

## BACKGROUND

Most of the material facts are undisputed, with a few key exceptions noted below. The events at issue took place on November 15, 2016. Plaintiff is a black male who, on that day, was 23 years old and 5'1" tall[2] and wore his hair in cornrows or braids and had facial hair.

---

[1] In his amended complaint, plaintiff also brought a Monell claim against the City of New York but has since withdrawn that claim and all of his claims against Officer Sanon.

[2] Plaintiff's counsel so stated at the December 19, 2017 conference.

At approximately 4:05 p.m., a woman called 911 to report that she had been robbed at gunpoint near the Marlboro Houses in Brooklyn. The 911 dispatch report states that the perpetrator came from the Marlboro Houses and that, after the robbery, the perpetrator ran into a park at the corner of Stillwell Avenue and Avenue V. The 911 caller described the robber as a 12-year-old (possibly 15-year-old), five-foot-tall black male with "light skin" and "a little afro."

Shortly after receiving the 911 call, defendants Officer William Dugan and Detective Angelo Pizzarro left the precinct to look for the suspect. Around the same time, plaintiff met up with his friend Eddyson Peña and the two of them began walking to plaintiff's apartment in the Marlboro Houses. Peña is a light-skinned Hispanic male, who, on that day was 19 years old, was 5'11" tall, and wore his hair in a small afro.

Officer Dugan and Detective Pizzarro entered the building's lobby shortly after plaintiff and Peña entered. The officers approached plaintiff and Peña as they waited for the elevator. The hood of plaintiff's hooded sweatshirt was up, concealing his hair.

Officer Dugan conducted a "stop and frisk" of plaintiff; Detective Pizzarro did the same for Peña. Plaintiff alleges that Officer Dugan frisked the outside of his pockets and searched inside them. Defendants deny that Officer Dugan searched plaintiff's pockets.[3]

After Officer Dugan completed the frisk and alleged search of plaintiff, three other police officers (including defendant Officers Ronald Sanchez and Marc Altman and another unidentified officer) entered the lobby. Those officers then escorted plaintiff and Peña outside to the front of the building. Plaintiff and Peña were not handcuffed.

---

[3] Defendants submitted with their motion video footage from the building's security camera, which confirms the basic events described here and the length of the stop. See Scott v. Harris, 550 U.S. 372, 380-81 (2007). However, because of the camera's angle, it is impossible to tell whether Officer Dugan reached inside plaintiff's pockets or merely frisked the outside of them.

While they were standing outside, the police brought the robbery victim to the front of the building for a show-up. The victim did not identify either as the robber. Plaintiff asked an unidentified officer if he was free to go, and the officer told him he was. Plaintiff then asked Officer Dugan for his name and shield number, which Officer Dugan provided. Officer Dugan then asked plaintiff for his identification. When plaintiff refused, Officer Sanchez[4] slammed his hand against plaintiff's shoulder and said, "we can do this the easy way or the hard way," and "you can either get me your ID or you can go to jail." Defendants dispute that this happened.

Plaintiff gave Officer Dugan his bank card; Officer Dugan noted it. He then returned the card to plaintiff and told him that he was free to leave.

Plaintiff then walked away from the officers, less than eight minutes after the stop began. Plaintiff reentered the apartment building and then came out again. He stood nearby until the officers put Penã in a police van for transport to the precinct, which happened approximately 12 minutes after the stop began.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material only when it is a dispute over facts that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he burden of demonstrating that no material fact exists lies with the moving party." Miner v. Clinton Cty., 541 F.3d 464, 471 (2d Cir. 2008).

---

[4] Plaintiff's amended complaint and Rule 56.1 statement say that Officer Sanchez was the one who struck plaintiff. The Court therefore disregards the statement in plaintiff's brief in opposition to defendants' motion that it was Officer Dugan, rather than Officer Sanchez, who struck him.

3

### I. Illegal Seizure, Illegal Search, and False Arrest Claims

   a. *Illegal Seizure Claim*

As a threshold matter, the parties disagree about whether this incident was only a Terry stop or whether it turned into an arrest. To determine whether a stop has become an arrest, the Second Circuit considers

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.

Grice v. McVeigh, 873 F.3d 162, 167 (2d Cir. 2017). The Second Circuit has also held that a stop lasting less than ten minutes does not exceed the permissible scope of a Terry stop. See United States v. Bailey, 743 F.3d 322, 335-36 (2d Cir. 2014).

In this case, the stop lasted less than eight minutes. The officers did not use any force during the stop (that is, from the time plaintiff was first stopped until the unidentified officer told him he was free to leave, although plaintiff alleges that Officer Sanchez used force against him after he reengaged with the officers). Plaintiff was neither handcuffed nor taken into custody. Only two officers stopped plaintiff and Penã, and although several more officers arrived on the scene later, some of them did so to bring the victim to the scene for the show-up. The number of officers on the scene would not by itself have led a reasonable person to conclude that plaintiff was in custody. The totality of the circumstances supports that this was a stop, not an arrest.

Plaintiff contends that even if the interaction was only a stop, it was still unlawful because the officers lacked reasonable suspicion. Reasonable suspicion requires that a defendant "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). Courts use an

4

objective standard to assess reasonable suspicion, id. at 22, examining the "totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000).

In Dancy v. McGinley, 843 F.3d 93, 109 (2d Cir. 2016), the Second Circuit held that officers lacked reasonable suspicion based on the description of the suspect as a "thin black male" because that description was "too vague in the circumstances . . . to justify a stop of anyone meeting it." The "circumstances" in Dancy included that the two high school students that the police stopped were "walking within several city blocks of the crime scene." Id. The Circuit concluded that this "proximity was innocuous given the unremarkable nature of the area in question" (on Main Street in downtown Poughkeepsie). Id. The Second Circuit has also stated that "race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop." United States v. Swindle, 407 F.3d 562, 569-70 (2d Cir. 2005).

In this case, the police officers had a description of the suspect's gender, race, height, age, and hairstyle. Dancy suggests that, absent more, the combination of the first three elements cannot give rise to reasonable suspicion. The fourth and fifth descriptors could not contribute to reasonable suspicion because plaintiff's hair did not match the victim's description (it was in cornrows or braids, not an afro) and plaintiff had a significant amount of facial hair, which would be unusual, although not impossible, for a 12- to 15-year-old. But these hair style and age discrepancies do not necessarily defeat reasonable suspicion either, because the officers could not see plaintiff's hair clearly (because his hood was up) and might reasonably have mistaken plaintiff's facial hair for that of a 15-year-old.

However, the remaining characteristics common to plaintiff and the suspect's description – gender, race, and height – are not enough to support reasonable suspicion where plaintiff was only in general temporal and geographical proximity to the crime. The Court therefore concludes that the officers lacked reasonable suspicion to stop plaintiff.

Second Circuit cases finding temporal and geographic proximity sufficient for a Terry stop are distinguishable. In United States v. McCargo, 464 F.3d 192, 197 (2d Cir. 2006), the suspect was only 200 feet away from the crime scene and the stop occurred just a few minutes after the reported attempted burglary. The McCargo Court noted that the defendant was walking alone in a high-crime area at midnight with no other pedestrians nearby when police stopped him.

In this case, the police stopped plaintiff and Peñã in the afternoon in an area where, according to the video, there were at least some other pedestrians. Additionally, according to the 911 dispatch report, the perpetrator "came from [the] Marlboro[] Project – when [the victim's] phone rang he ran to the park." Although the parties agree that both the park and the building lobby where plaintiff was stopped are in the vicinity of Stillwell and Avenue V, there is no indication that the two are as close as in McCargo. Furthermore, although the parties did not agree on the exact time of the stop, neither party contends that the stop occurred any sooner than 30 minutes after the crime, significantly longer than the time in McCargo.

Facially similar Second Circuit cases involving vague physical descriptions as well as temporal and geographical proximity are also distinguishable. In United States v. Bailey, 743 F.3d 322, 326, 335-36 (2d Cir. 2014), the Second Circuit concluded that the officers had reasonable suspicion to stop two persons whose race, sex, build, and hair were consistent with an informant's description of the man who had sold him drugs, and who were seen leaving the

premises where the reported drug sale took place and which the police had already obtained a warrant to search. Another case, United States v. Salazar, 945 F.2d 47, 49-51 (2d Cir. 1991), involved a much stronger connection to the location as well. The Second Circuit held that the officers had reasonable suspicion to justify a stop and pat down of the defendant when he matched the description of the suspect in height, coloring, sex, and ethnicity, and when he entered unannounced into the specific apartment the informant had identified and which the police had permission to search.

In this case, plaintiff was stopped in the elevator bank of an apartment building – an "innocuous" public area where many people (some or many of whom might fit the description of a short black male) might pass by.

Accordingly, the police lacked reasonable suspicion to stop plaintiff.[5]

    b. *Qualified Immunity on Illegal Seizure Claim*

Even though the Court has concluded that Officer Dugan lacked reasonable suspicion to stop plaintiff, he may still be entitled to qualified immunity on plaintiff's illegal seizure claim if the right violated was not "clearly established" at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The inquiry into whether a right is clearly established is an objective one: the plaintiff must show that the defendant "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time

---

[5] Plaintiff brought a claim for false arrest under § 1983 in addition to his claims for an unlawful seizure and search. The Court concludes that plaintiff was not arrested, so his false arrest claim fails as a matter of law. See Grice, 873 F.3d at 166. His state law false arrest claims also fail, because the elements of the federal and state claim for false arrest are substantially identical. See Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir. 1999).

7

of the incident" or to "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." al-Kidd, 563 U.S. at 746 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). There need not be "a case directly on point, [but] existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see also Hope v. Pelzer, 536 U.S. 730, 741 (2002); Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251 (2d Cir. 2001). This means that "clearly established" law should not be defined "at a high level of generality," id. at 742, but instead must be "'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The requirement that the right at issue be clearly established means that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, the Court has already concluded that Officer Dugan violated plaintiff's Fourth Amendment rights by stopping him without reasonable suspicion. But that conclusion was informed significantly by the Second Circuit's decision in Dancy, which was decided after plaintiff was stopped, so that case could not have "clearly established" the right that the Court concludes was violated here "at the time of the challenged conduct." And plaintiff has not identified any other binding precedent or a consensus of persuasive authority which clearly established that Officer Dugan's conduct was unlawful.

Of course, plaintiff need not cite a case with identical facts to show that the constitutional right is clearly established. But it is not enough for plaintiff to point to the general proposition that an unreasonable stop violates the Fourth Amendment, and plaintiff has done no more than

that here. Because the constitutional right was not clearly established at the time plaintiff was stopped, Officer Dugan is entitled to qualified immunity.

The Court therefore grants defendants' motion for summary judgment on plaintiff's unlawful seizure claim based on the Terry stop.

    c. *Illegal Search Claim*

Defendants also move to dismiss plaintiff's claim based on the alleged illegal search by Officer Dugan. Under the Fourth Amendment, an officer generally must have probable cause – knowledge of facts or circumstances which would lead a reasonable officer to believe that an offense has been or is being committed – to search a person. Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009). The Court has already concluded that Officer Dugan lacked reasonable suspicion to stop plaintiff. Defendants do not point to anything that happened during Officer Dugan's frisk of plaintiff that could have created probable cause to search, so his search of plaintiff's pockets would have violated the Fourth Amendment. Therefore, the parties' dispute about whether Officer Dugan searched plaintiff's pockets is material to plaintiff's illegal search claim and precludes summary judgment.[6]

## II. Excessive Force

The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by police in the course of an investigatory stop. See Graham v. Connor, 490 U.S. 386, 395 (1989). Nevertheless, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396. The reasonableness test is a fact-specific inquiry that requires balancing the "intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at

---

[6] If there is a state law counterpart to the illegal search claim, plaintiff has not alleged it or defended it in opposition to the motion to dismiss.

stake." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). When balancing those interests, Second Circuit courts consider at least: (1) the nature and severity of the suspected crime, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

Courts evaluate the record "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," recognizing that "police officers are often forced to make split-second judgments." Graham, 490 U.S. at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396 (citation omitted).

"The slightness of injury suffered as a result of the challenged use of force . . . does not preclude a finding that such force was objectively unreasonable." Adedeji v. Hoder, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013). Force may therefore be excessive even if it does not result in injuries requiring medical treatment or even injuries greater than bruising or soreness. See Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987). But the extent of plaintiff's injuries is still "probative of the amount and type of the force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force." Richardson v. Providence, No. 09-CV-4647, 2011 WL 3701887, at *7 n.3 (E.D.N.Y. Aug. 22, 2011) (internal quotation marks and citation omitted); see Maxwell v. City of N.Y., 380 F.3d 106 (2d Cir. 2004).[7]

Here, after the show-up, an unidentified officer told plaintiff that he was free to go. Plaintiff then asked Officer Dugan for his name and shield number, which Officer Dugan

---

[7] Defendants cite Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) for the proposition that a *de minimis* use of force is not actionable, but Romano did so in the context of an excessive force claim under the Eighth Amendment, specifically, in examining whether the alleged wrongdoing was "sufficiently serious" or "harmful enough" to establish a constitutional violation. A Fourth Amendment excessive force claim requires a different analysis. See Brown v. Doe, 2 F.3d 1236, 1242 n.1 (2d Cir. 1993).

provided. Officer Dugan then asked plaintiff for his identification. Plaintiff refused. Plaintiff alleges that in response, Officer Sanchez slammed his hand against plaintiff's shoulder and said "we can do this the easy way or the hard way," and "either you get me your ID or you can go to jail."

Defendants dispute plaintiff's allegations and claim that Officer Sanchez merely held his arm out to stop plaintiff when plaintiff took a step toward him. Defendants argue that plaintiff's version of the events is not supported by the evidence because plaintiff claims that his arm was only sore and bruised and because plaintiff has not provided any evidence besides his own testimony to prove these injuries. Construing the evidence and drawing all reasonable inferences in favor of plaintiff as the non-moving party, the Court assumes that Officer Sanchez "slammed" his hand into plaintiff's shoulder with a degree of force that caused soreness and bruising, but no further injury.

The "governmental interests at stake" that might justify the use of force were not significant here: the victim had not identified plaintiff as the robber and a police officer had told plaintiff that he was free to leave. Thus, although the nature or severity of the alleged crime – armed robbery – might have justified more force in another context, it did not here. Nor was there a significant "immediate threat" to the officers. There was some governmental interest in preventing evasion: plaintiff alleges that the force occurred after he refused to give his information to the defendant officers, which could be interpreted as an "attempt to evade," even if it was not an attempt to evade arrest.

However, the "intrusion on plaintiff's Fourth Amendment interests" here was also slight. Plaintiff's claim is based on a single push or strike in which Officer Sanchez hit plaintiff's shoulder, but only hard enough to cause soreness and bruising without causing other injury.

Even if in retrospect a push may not seem necessary to obtain plaintiff's identification, some minimal degree of physical force or coercion was reasonable to ensure that plaintiff complied with Officer Dugan's request. Balancing the governmental interests at stake and the amount of intrusion, the force used by Officer Sanchez was not excessive under the circumstances.

Plaintiff argues that according to the Second Circuit's opinion in Tracy, any use of entirely gratuitous force is unreasonable and therefore excessive. Plaintiff is correct about the law, but his argument does not add anything to the above analysis. Whether a given use of force is "gratuitous" – a synonym for "excessive," see Roget's International Thesaurus at entry 993.17 (6th ed. 2001) – is context specific. In Tracy, the Second Circuit concluded that using pepper spray (which the panel referred to as a "significant degree of force") was gratuitous where the arrestee was handcuffed and was not resisting. A single push of plaintiff's shoulder, even "slamming" a hand into his shoulder, is significantly less force than using pepper spray on a person's face at close range. And although plaintiff was not actively physically resisting, he was not handcuffed like the arrestee in Tracy,[8] and was therefore at least marginally more of a threat than the Tracy plaintiff.

Finally, plaintiff points to Robison, which also involved a plaintiff whose only injury was bruising. Robison is not analogous because the degree of force alleged was significantly greater than here: a state trooper applied an arm-bar, pushed plaintiff against the inside of her car door, and then yanked her out and threw her up against the fender so that her hip hit the car. Here, plaintiff alleges that Officer Sanchez slammed his hand into plaintiff's shoulder once. The Robison Court affirmed summary judgment in favor of a second state trooper who allegedly pushed or pulled or pried at plaintiff's fingers while plaintiff clutched her child, concluding that

---

[8] The Tracy Court assumed for the purpose of the summary judgment motion that plaintiff was handcuffed.

12

this exertion of force on plaintiff's fingers did not come close to excessive. The amount of force exerted by Officer Sanchez here is more analogous to the second Robison trooper than to the first one and is similarly not excessive. Defendants' motion for summary judgment is therefore granted on plaintiff's excessive force claim.

The essential elements of plaintiff's state law assault and battery claims against Officer Sanchez (and any corresponding *respondeat superior* claim against the City) are materially identical to the excessive force claims, see Posr v. Doherty, 944 F.2d 91, 95 (2d Cir. 1991), and therefore defendants' motion for summary judgment is granted as to those state law claims as well.

### III.     First Amendment Retaliation

Defendants also move to dismiss plaintiff's First Amendment retaliation claim. To state a retaliation claim, a private citizen plaintiff must show that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010).

Plaintiff's First Amendment retaliation claim is a bit convoluted. Plaintiff alleges that after he was told that he was free to go, he asked Officer Dugan for his badge number. The parties agree that Officer Dugan provided his badge number and then asked plaintiff for his own identification. Plaintiff refused. He alleges that Officer Sanchez then slammed his hand into plaintiff's shoulder and threatened him with arrest if he did not provide identification. Plaintiff argues that this push and threat constituted retaliation for plaintiff's refusal to provide his identification.

Plaintiff has not identified a First Amendment interest in declining to give his identification to the police, and therefore his claim fails.

IV. **Failure to Intervene**

Defendants also move to dismiss plaintiff's claim for failure to intervene during the three separate constitutional violations he alleged: unconstitutional stop and frisk and search, use of excessive force, and retaliation in violation of the First Amendment. To prevail on a claim for failure to intervene, plaintiff must prove that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene. Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Because the Court has already concluded that plaintiff's excessive force and First Amendment retaliation claims fail, the failure to intervene claims against all of the other individual defendants based on those alleged constitutional violations fail as well.

Plaintiff's failure to intervene claim based on the illegal stop and disputed illegal search fails as to Officers Sanchez and Altman, because, even though Officer Sanchez testified that he and Officer Altman were present when plaintiff was frisked, the video footage shows that they did not arrive in the lobby until after the stop and frisk (and alleged search) occurred, and therefore could not have intervened. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

The failure to intervene claim against Detective Pizzarro also fails as to the decision to stop and frisk plaintiff in light of the Court's decision on qualified immunity – plaintiff cannot show that a reasonable person in Detective Pizzarro's position would know that the victim's constitutional rights were being violated because they were not clearly established at the time of the stop. And as to the decision to search plaintiff, plaintiff has produced no evidence that

14

Detective Pizzarro had a realistic opportunity to intervene: in the video, Detective Pizzarro has his back to Officer Dugan during all but two seconds of the approximately 12 seconds Dugan was patting down and allegedly searching plaintiff (Detective Pizzarro glances over his shoulder twice, each time for approximately one second). Because there is no evidence that Detective Pizzarro would have had a realistic opportunity to intervene, the claim is dismissed as to him.

## CONCLUSION

Defendants' motion for summary judgment [33] is GRANTED IN PART AND DENIED IN PART. Defendants' motion for summary judgment is granted as to plaintiff's § 1983 claims for false arrest, illegal seizure, First Amendment retaliation, excessive force, and failure to intervene. Defendants' motion is also granted as to plaintiff's state law claims for battery, assault, false arrest, and the corresponding claim against the City for *respondeat superior* liability. Defendants' motion is denied as to plaintiff's § 1983 claim for illegal search against Officer Dugan.

By separate order, the Court will set this matter down for trial.

**SO ORDERED.**

                                                  U.S.D.J.

Dated: Brooklyn, New York
       July 2, 2018