UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
SHAHEYM FERGUSON,                                           :
                                                            :
                            Plaintiff,                      :
                                                            :  **MEMORANDUM**
                - against -                                 :  **DECISION AND ORDER**
                                                            :
CITY OF NEW YORK, POLICE OFFICER                            :  17-cv-4090 (BMC)
WILLIAM DUGAN, POLICE OFFICER                               :
RONALD SANCHEZ, DET. ANGELO                                 :
PIZZARRO, P.O. PATRICK SANON, and P.O.                      :
MARC ALTMAN,                                                :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff Shaheym Ferguson moves for reconsideration of this Court's order granting summary judgment in favor of defendants on all of plaintiff's claims except his illegal search claim against Officer Dugan. Familiarity with this Court's prior decision is assumed.

The Court denies reconsideration as to plaintiff's Fourth Amendment false arrest claim and his failure-to-intervene claim deriving from his excessive force claim. The Court grants reconsideration as to plaintiff's Fourth Amendment excessive force claim, his state law assault and battery claims, his Fourth Amendment illegal seizure claim (as to the period after the show-up), his state law false arrest claim, his First Amendment retaliation claim, and his failure-to-intervene claims based on the claims for retaliation and for illegal seizure (post show-up).

**DISCUSSION**

The standard for granting a motion for reconsideration is strict. Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

## I. Fourth Amendment False Arrest Claim and Qualified Immunity

Plaintiff moves for reconsideration of his Fourth Amendment false arrest claim, arguing that his Terry stop was actually a *de facto* arrest that violated the Fourth Amendment. In the motion, plaintiff simply rehashes the same arguments he made in support of his motion for summary judgment. Plaintiff does not point to facts or arguments that he presented to the Court that the Court overlooked.[1] Instead, plaintiff cites in his reconsideration motion the same multi-factor test that the Court cited in its opinion. Furthermore, contrary to plaintiff's argument for reconsideration, the Court did not conclude that there is a bright-line rule for when a Terry stop amounts to an arrest. The Court's final sentence of the relevant portion of the opinion states that "[t]he totality of the circumstances supports that this was a stop, not an arrest." The Court denies reconsideration as to plaintiff's Fourth Amendment false arrest claim.

Plaintiff's argument on the Court's qualified immunity ruling fails for similar reasons. Plaintiff argues in his motion that the Court's ruling was erroneous because "Dancy [v. McGinley, 843 F.3d 93 (2d Cir. 2016)] . . . did not break any new ground in terms of what is a permissible basis for a Terry stop [but] . . . merely restated the holdings of two controlling cases,

---

[1] Plaintiff cites a case he had not previously cited, United States v. Gomez, 877 F.3d 76, 81 (2d Cir. 2017), but it is inapposite. In that case, the Second Circuit concluded that a stop, although only five minutes long, violated the Fourth Amendment because it exceeded the time necessary based on the original reason for the stop. The Second Circuit did not conclude that the stop in Gomez was a *de facto* arrest.

2

which are cited in the decision, that were decided many years before the plaintiff in this case was seized by the defendants."

But plaintiff does not point to any caselaw that the Court failed to consider which clearly established that this stop was illegal. As the Court explained in its opinion, Dancy built upon earlier case law, which had already concluded that race alone or race and gender alone are not enough to generate reasonable suspicion. What made Dancy different from those earlier cases – and analogous to this one – is that the Second Circuit concluded that race, gender, and one other descriptor (in Dancy, body build, in this case, height) were also not enough to create reasonable suspicion, at least where plaintiff was stopped in an "unremarkable" environment in only general temporal and geographical proximity to the crime.

Furthermore, contrary to plaintiff's arguments, the Court acknowledged that there need not be "a case directly on point" for a right to be clearly established, but also acknowledged the Supreme Court's admonition that "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). The legal interpretation of this incident was not beyond debate. Plaintiff's motion for reconsideration of the qualified immunity ruling is denied.

## II. Excessive Force and State Law Assault and Battery Claims

As to the excessive force and state law assault and battery claims, plaintiff argues that the Court erred by concluding that any degree of force by Officer Sanchez was appropriate. In plaintiff's view, the victim's response at the show-up eliminated any suspicion that he committed the robbery and nothing after the show-up created any suspicion about him.

The Court agrees with plaintiff that reconsideration is appropriate to correct a clear error: summary judgment should not have been granted as to plaintiff's state-law assault and battery

claims and as to plaintiff's Fourth Amendment excessive force claim for the reasons plaintiff argues.

First, as to the state law claims, under New York law, any use of force by a police officer outside the context of a lawful seizure or arrest – regardless of the amount of force – is a technical assault or battery. Sulkowska v. City of N.Y., 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); Johnson v. Suffolk Cty. Police Dep't, 245 A.D.2d 340, 665 N.Y.S.2d 440, 440 (2d Dep't 1997). Here, defendants did not present any evidence that the force alleged happened during a lawful seizure or arrest; after the show-up, plaintiff was told that he was free to go and Officer Dugan only asked for plaintiff's identification in response to plaintiff's request for his badge number. Any intentional physical contact by Officer Sanchez without plaintiff's consent was at least a technical assault or battery under New York law because it occurred outside a lawful seizure. See Green v. City of N.Y., 465 F.3d 65, 86 (2d Cir. 2006).

A Fourth Amendment excessive force claim, on the other hand, requires the Court to consider the degree of force exerted (in the context of various factors). But an officer's "right to use some degree of physical coercion or threat thereof to effect it," Graham v. Connor, 490 U.S. 386, 396 (1989), only arises during an arrest or an investigatory stop. There was no arrest or investigatory stop happening when Officer Sanchez allegedly slammed his hand into plaintiff's shoulder (nor grounds for suspicion to support one), and therefore any degree of physical force imposed would have been unreasonable. Furthermore, because the right to be free of entirely gratuitous force was clearly established at the time of this incident, see Tracy v. Freshwater, 623 F.3d 90, 99 n.5 (2d Cir. 2010), Officer Sanchez is not entitled to qualified immunity.

Of course, the parties dispute whether Officer Sanchez struck plaintiff at all. That disputed fact is material for the state law assault and battery and Fourth Amendment excessive force claims and therefore precludes summary judgment on those claims.

Even if plaintiff's version prevails, this is not to say that plaintiff is entitled to anything more than nominal damages for this very brief encounter. But the presence or absence of damage does not defeat the potential liability for these claims if plaintiff prevails on the facts that he has introduced on this motion.

Because New York City is liable for the intentional torts committed by its employees within the scope of their employment, summary judgment is also inappropriate on the corresponding *respondeat superior* claim against the City based on the assault and battery claim against Officer Sanchez. See Green, 465 F.3d at 86.[2]

### III. Fourth Amendment Illegal Seizure After Show-Up

The Court's reconsideration of the claims surrounding the events after the show-up and the Court's conclusion that the officers lacked reasonable suspicion to detain plaintiff after the show-up have led the Court to reconsider plaintiff's illegal seizure claim as to the brief period plaintiff was detained after the show-up. That period is the time between when Officer Sanchez allegedly slammed his hand into plaintiff and when Officer Dugan returned plaintiff's bank card to him and told plaintiff that he was free to leave (which includes the time that Officer Dugan took to write down plaintiff's information). Officer Sanchez testified at his deposition that he prevented plaintiff from leaving the scene during this time so that Officer Dugan could record plaintiff's information.

---

[2] Since the issue of *respondeat superior* liability will be determined as a matter of law from the jury's verdict as to the individual officers, the Court is likely to sever that claim at trial and enter judgment after the jury returns its verdict. But the Court will make no final determination on that until it hears from the parties.

This period was likely quite brief – based on the video, it appears that the time between when the show-up ended and when plaintiff walked away from the group of officers and into the apartment building is a little less than four minutes. (Officer Dugan testified at his deposition that the time between the "negative show-up" and when plaintiff was told that he could leave the second time was "approximately four to five minutes."). Again, the Court is skeptical that plaintiff will be able to demonstrate significant damages based on an illegal stop that involved such a limited intrusion. Nevertheless, if the officers lacked reasonable suspicion to detain plaintiff, the seizure was illegal, despite its brevity.

Defendants argued in their motion for summary judgment and reply that even if this brief detention after the show-up was illegal, the officers are entitled to qualified immunity because their belief that they could detain plaintiff in order to obtain his information for their paperwork was reasonable, if mistaken. This argument might have more purchase if the original stop had been valid. However, as the Court concluded in the order granting summary judgment in part, Officer Dugan lacked reasonable suspicion to stop plaintiff in the first instance. Although that lack of reasonable suspicion was not obvious under the clearly established law (thus entitling Officer Dugan to qualified immunity), that insufficient suspicion had dissipated entirely after the negative show up. It would have been unreasonable for an officer to think that he could detain plaintiff, without any suspicion at all, to complete his paperwork.

The Court therefore reinstates the illegal seizure claim against Officer Sanchez as to the period after the show-up.

## IV. State Law False Arrest Claim

Plaintiff also moves the Court to reconsider its dismissal of plaintiff's state law "false arrest/false imprisonment" claim. Plaintiff's opposition to the motion for summary judgment

was not very clear when it discussed this claim.  Plaintiff did not mention the state law false arrest claim directly at all or cite any New York cases.  His only reference to his state law claims is a sentence in the "false arrest" section (which addressed only claims based on an arrest, not a non-arrest seizure) stating that the elements of a federal and state claim for false arrest are substantially identical.  Plaintiff argued and cited cases for the proposition that probable cause is necessary to supply the "otherwise privileged" element of a false arrest claim based on an illegal arrest under *federal law*, but did not otherwise connect this point to his argument about any illegal non-arrest seizure, or to his false arrest claim under New York law.[3]

Nonetheless, the Court concludes that reconsideration is warranted to correct the clear error of denying plaintiff's state law false arrest claim.  Plaintiff's state law false arrest claim is a type of false imprisonment claim, which under New York law covers all confinement – not just arrests – for which there is no legal justification.  See Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93-94 (1975).  "To establish a claim for false imprisonment, [plaintiff] needs to show that defendant intended to confine him, that he was conscious of the confinement, that he did not consent to it, and that the confinement was not otherwise privileged."  Moulton v. State, 114 A.D.3d 115, 119-20, 977 N.Y.S.2d 797, 801 (3d Dep't 2013) (internal quotation marks and citation omitted).

Under New York law, it is the defendant's burden to show that the arrest was privileged, that is, that there was legal justification for the confinement.  See id., 114 A.D.3d at 120, 977 N.Y.S.2d at 802; Gebbie v. Gertz Div. of Allied Stores of N.Y., Inc., 94 A.D.2d 165, 169, 463 N.Y.S.2d 482, 485 (2d Dep't 1983).  New York law requires a police officer to have reasonable suspicion to stop or detain someone.  People v. Martinez, 80 N.Y.2d 444, 447, 591 N.Y.S.2d

---

[3] Should plaintiff prevail at trial and seek attorneys' fees, the Court may take this lack of clarity into consideration.

7

823, 824 (1992). "Reasonable suspicion" to stop someone under New York law is co-extensive with the federal reasonable suspicion standard. See People v. Cantor, 36 N.Y.2d 106, 113, 365 N.Y.S.2d 509, 516 (1975) (quoting Terry v. Ohio, 392 U.S. 1 (1968)).

Plaintiff was seized at two different points during this encounter. The first began when Officer Dugan approached him in the lobby and ended when plaintiff was told that he was free to leave after the show-up. Plaintiff has produced evidence (the video, plaintiff's deposition testimony and affidavits) that supports the first three elements of a state law claim for false arrest in this situation – Officer Dugan "confined" plaintiff when he stopped him, plaintiff was conscious of the confinement, and plaintiff did not consent to it. The last element is satisfied as well, because the Court has already concluded that Officer Dugan lacked reasonable suspicion to stop plaintiff.

The second seizure began after the show-up, when Office Sanchez allegedly slammed his hand into plaintiff's shoulder and threatened him with arrest. This second seizure ended approximately four minutes later when plaintiff was told a second time that he was free to leave and actually walked away from the officers. Officer Sanchez testified at his deposition that he prevented plaintiff from leaving the scene after the show-up so that an officer could record his identification information. That testimony, as well as plaintiff's testimony at his own deposition, also supports the first three elements of a state law false arrest claim: Officer Sanchez "confined" plaintiff by preventing him from leaving the scene, plaintiff was conscious of the confinement, and plaintiff did not consent to it. As discussed in Part III, once the victim told the officers that plaintiff was not the robber, they had no reasonable suspicion to detain him. Defendants have not argued or produced any evidence of an alternative source of suspicion which could create the legal justification for detaining plaintiff.

Furthermore, neither officer is entitled to qualified immunity on this claim under New York law, which grants government officials qualified immunity on state law claims, "except where the officials' actions are undertaken in bad faith or without a reasonable basis." Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006). Specifically for false arrest claims, qualified immunity depends on whether it was objectively reasonable for the police to believe that they had legal justification for the seizure. See id. at 64 (so stating in the context of an illegal arrest).

The Court has already concluded that it was not objectively reasonable for Officer Dugan to believe that he had reasonable suspicion to stop plaintiff based on the description he was provided and the context. Officer Dugan therefore lacked a "reasonable basis" to stop plaintiff and is not entitled to qualified immunity under state law.[4]

As to the second seizure, the Court has concluded in this order that there was no source of suspicion whatsoever, and therefore no reasonable basis for Officer Sanchez to detain plaintiff after the negative show-up. Summary judgment was therefore inappropriate as to plaintiff's state law false arrest claim against Officer Dugan for the first seizure and against Officer Sanchez for the second.

"[U]nder New York State law, municipalities may be held vicariously liable for false arrest and malicious prosecution under a theory of respondeat superior." Norton v. Town of Brookhaven, 33 F. Supp. 3d 215, 237 (E.D.N.Y. 2014). Because the Court has concluded that summary judgment is inappropriate for plaintiff's state law false arrest claims against Officers

---

[4] The Court's conclusion that Officer Dugan is entitled to qualified immunity based on a lack of clearly established federal law does not alter this conclusion. Defendants have not argued or cited any cases suggesting that an absence of clearly established federal law can create a reasonable basis to support qualified immunity under state law. This is distinguishable from a situation where an officer's reasonable suspicion determination was incorrect but objectively reasonable, which could support qualified immunity under federal law and provide the "reasonable basis" for qualified immunity under state law. See Jenkins v. City of N.Y., 478 F.3d 76, 88 (2d Cir. 2007).

9

Dugan and Sanchez, it is also inappropriate for the corresponding *respondeat superior* claims against the City of New York.

V.      **First Amendment Retaliation Claim**

As to his First Amendment retaliation claim, plaintiff argues that the Court mischaracterized his claim, which is based on his complaint to the police about having to provide identification. After reviewing plaintiff's opposition to the motion for summary judgment, the Court agrees with plaintiff that his claim is based on his complaint to the officers about having to provide identification, rather than on his refusal to provide identification itself. Defendants respond that this distinction is fine, and it is, but it is significant because the Supreme Court has specifically stated that the First Amendment protects verbal criticism of police officers. See City of Houston v. Hill, 482 U.S. 451, 461 (1987). The Court therefore grants the motion for reconsideration as to plaintiff's First Amendment retaliation claim. The Court further concludes that there remains a genuine dispute of material fact precluding summary judgment on that claim.

A private citizen plaintiff bringing a First Amendment retaliation claim based on his criticism of a public official must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (quoting Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)). In this context, the plaintiff must show that he suffered an "actual chill" of his speech because of the public official's retaliation. Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011). As plaintiff notes, "[t]he First Amendment protects a

significant amount of verbal criticism and challenge directed at police officers." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 415 (2d Cir. 1999) (quoting Hill, 482 U.S. at 461).

Plaintiff testified at his deposition that, in response to his complaint about Officer Dugan asking for his identification only after he asked for the officer's badge number, Officer Sanchez "slammed his hand against plaintiff's shoulder" and told him that "we can do this the easy way or the hard way" and "you can either you get me your ID or you can go to jail." Plaintiff alleged that he stopped complaining and provided his identification because he was afraid of being taken to jail and of being struck a second time. Officer Sanchez denies that he pushed or threatened plaintiff.

As noted above, "[t]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." Posr, 180 F.3d at 415 (quoting Hill, 482 U.S. at 461). Plaintiff's complaint about only having to provide his information after he asked Officer Dugan for his badge number (implying that Officer Dugan did not have a good reason to ask for plaintiff's identification) is the type of verbal criticism or challenge covered by the First Amendment.[5]

Summary judgment is inappropriate on this claim because there is a genuine dispute of fact about whether Officer Sanchez pushed and threatened plaintiff as he alleges, which is essential to the other elements of causation and effective chilling of speech. Viewing the facts in the light most favorable to plaintiff, he has presented sufficient evidence from which a jury could conclude that Officer Sanchez's actions were motivated or substantially caused by his exercise of

---

[5] Although defendants argued in their motion for summary judgment that they were entitled to qualified immunity on the claims for false arrest/illegal seizure (both before and after the show-up), excessive force, and failure to intervene, they did not mention or cite any cases to support qualified immunity for the First Amendment retaliation claim. Defendants did not dispute plaintiff's characterization that the right to criticize the police without being retaliated against is clearly established.

his right to criticize the police and that his speech was in fact chilled by Officer Sanchez's threat and shove.

## VI. Failure-to-Intervene Claims

Plaintiff also urges the Court to reconsider its rulings on the failure-to-intervene claims. Because the Court has granted reconsideration as to the claims for excessive force, illegal seizure (post show-up), and First Amendment retaliation, reconsideration of the failure-to-intervene claims based on those claims could be appropriate. As explained below, the Court declines to reconsider the failure-to-intervene claims as to the excessive force claim, but grants reconsideration as to the other two.

To prevail on a claim for failure to intervene, plaintiff must show that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene. Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); see, e.g., Pierce v. City of N.Y., 293 F. Supp. 3d 306, 314 (E.D.N.Y. 2017).

Plaintiff's excessive force claim against Officer Sanchez is based on a single action: Officer Sanchez "slamm[ing] his hand against [plaintiff's] shoulder." Plaintiff has not presented any evidence that the other officers had a realistic opportunity to intervene to stop Officer Sanchez from shoving plaintiff the one time alleged. I don't see how a reasonable jury could

conclude that they did. There is no evidence that Officer Sanchez decided in advance to do it, or that, even if he did, the other officers knew about it.

Plaintiff's First Amendment retaliation claim and the illegal seizure claims are different. The First Amendment retaliation claim is based on Officer Sanchez shoving plaintiff, as well as Officer Sanchez's alleged threats that "we can do this the easy way or the hard way" and "you can either you get me your ID or you can go to jail." Unlike with the excessive force claim, where plaintiff experienced the harm at the moment Officer Sanchez allegedly struck him, the harm from the retaliation claim is the chilling of plaintiff's speech that allegedly followed Officer Sanchez's action and words. It is not clear exactly how quickly after Officer Sanchez's alleged shove and threats plaintiff stopped objecting and produced his bank card as identification. But nor is there evidence from which a reasonable jury could not conclude that it was enough time for another officer to speak up and rectify the retaliation, either by telling plaintiff that he would not be taken to jail for refusing to produce his identification or something similar.

Similarly, the failure-to-intervene claim based on the illegal seizure after the negative show-up is also based on a harm that continued the entire time plaintiff was prevented from leaving the scene without cause. Although the video evidence suggests this seizure was brief (four or so minutes long), a reasonable jury could conclude that four minutes was enough time for another officer to intervene by telling plaintiff he was free to leave and letting him leave.

Plaintiff's motion-to-intervene claims based on his First Amendment retaliation claim and the illegal seizure (post show-up) are therefore reinstated.

13

## CONCLUSION

Plaintiff's motion for reconsideration [46] is GRANTED IN PART AND DENIED IN PART. The Court hereby reinstates plaintiff's claim against Officer Dugan for false arrest under New York law and his claims against Officer Sanchez for excessive force, state law assault and battery, illegal seizure (after the show-up), and First Amendment retaliation. The Court reinstates plaintiff's failure-to-intervene claims based on the illegal seizure (post show-up) and the First Amendment retaliation against Officer Dugan, Detective Pizzarro, and Officer Altman. The Court also reinstates the *respondeat superior* claims against the City of New York based on the state law false arrest claims against Officers Dugan and Sanchez and based on the assault and battery claims against Officer Sanchez.

In light of this order reinstating some of the claims and some defendants, the Court will issue separately an order rescheduling the Final Pretrial Conference.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
July 30, 2018